## IN THE STATE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERNEST HAYWARD WARD,

      Plaintiff,

v.

TROUP COUNTY SCHOOL
DISTRICT,

      Defendant.

CIVIL ACTION FILE
NO. 3:17-cv-00183-TCB-RGV

---

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION
## FOR SUMMARY JUDGMENT

COMES NOW, **TROUP COUNTY SCHOOL DISTRICT** ("Defendant" or the "School District"), named as Defendant in the above-styled matter, and pursuant to Fed. R. Civ. P. 56 and N.D. Ga. LR 7.1 submits this its Brief in Support of its Motion for Summary Judgment, in support of which it relies upon all facts and pleadings of record and the accompanying Affidavits and Exhibits, respectfully showing the Court the following:

### I.      INTRODUCTION AND NATURE OF PLAINTIFF'S CLAIMS

This matter concerns allegations of race and gender discrimination in violation of Title VII and § 1981, retaliation in violation of Title VII, and of a First

Amendment violation. Following Defendant's Motion to Dismiss Plaintiff's original Complaint and on Plaintiff Ernest Ward's Motion, the Magistrate Judge permitted Ward to amend his Complaint, with the operative Complaint limited to the following claims: (1) race and gender discrimination under Title VII and § 1981; (2) retaliation under Title VII and § 1981; and (3) a First Amendment violation brought under § 1983. (See generally Doc. 28). Plaintiff then submitted his operative Amended Complaint. (Doc. 30).

As the basis for his race and gender discrimination claims, Ward alleges to have suffered two (2)[1] adverse employment actions[2] in contrast to his proposed

---

[1] Throughout his Complaint, Ward makes other allegations, including that Ward's school was overcrowded, he did not receive additional administrative help, bus routes and student arrival times at his school were scheduled due to an unspecified animus, and Caucasian and/or female principals were not required to revise School Improvement Plans ("SIPs"). (See generally Doc. 30). To the extent that these claims attempt to assert race or gender discrimination as opposed to a hostile environment claim (see n.2, below), they are addressed in Section IV.B.4.

[2] Against the express instructions of the Magistrate Judge (Doc. 28, p. 45 (ordering Ward to file his second amended complaint "asserting only those claims which the Court has authorized to proceed"); Id., n. 12 (granting Ward's motion for leave to file a second amended complaint with respect to race and sex discrimination claims and his First Amendment claim, and denying Ward's motion with respect to his claims for punitive damages and hostile work environment)), Ward attempts to nest in his Complaint a re-asserted hostile work environment claim. (See Doc. 30, pp. 55-56). Due to the Magistrate Judge's Order (Doc. 28), this claim is a nullity, and therefore Defendant's Motion will not address the same.

Caucasian, female comparators: (1) in November 2013, following evaluation,[3] Ward was placed on a Professional Development Plan (PDP) after his previous year's evaluation was marked "satisfactory;"[4] and (2) that Ward was removed from his position of principal, unlike his proffered comparators following supposedly similar conduct.[5] Ward further asserts a Monell claim for race and sex discrimination against the School District on the basis of an alleged policy, practice, or custom of hiring very few African-American male principals and/or removing African-American male principals from that position. (Id., pp. 62-63).

Ward asserts that his removal from the position of principal constitutes retaliation for two (2) acts: (1) complaining in October 2013, in some unspecified context, to the Troup County School Board and Central Office about placement of low-income African-American students at the school where Ward was principal (Id., pp. 58-59); and (2) filing a grievance against his supervisor after receiving his evaluation (Doc. 30, p. 58).

---

[3] Ward claims that his evaluation involved "misinterpretation and misapplication of the Georgia Leadership Evaluation Instrument." Ward pleads nothing to specify what this means or how the evaluation instrument was "misinterpreted" or "misapplied," and has produced no evidence thereof.

[4] Doc. 30, p. 55.

[5] Id., pp. 57-58.

Ward's First Amendment claim is based on the allegation that the Superintendent's denial of a grievance filed against Ward's supervisor following the evaluation deprived Ward of a right to a final appeal to the Troup County Board of Education. (Doc. 30, pp. 60-62).

Discovery in this matter concluded on July 1, 2019. (See Doc. 39, p. 1). During discovery, Ward tendered no Requests for Production of Documents nor Requests for Admission, noticed no depositions, and produced nothing beyond the documents submitted with his Initial Disclosures. (See generally Docket, noting no notices of deposition or certificates of service of discovery beyond Plaintiff's Interrogatories). The School District now timely moves for summary judgment as to each and every one of Ward's claims.

## II.    STATEMENT OF FACTS

The School District hereby incorporates by reference its accompanying Statement of Undisputed Material Facts pursuant to Fed. R. Civ. P. 10.

## III.    STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The moving party must show that there is an absence of evidence to support the non-movant's case; it is not required to negate his opponent's

claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). Once that showing is made, the burden shifts to the non-movant to demonstrate that there is a material issue of fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The mere existence of some factual dispute does not preclude summary judgment; rather, a plaintiff must establish a "*genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original). In this regard, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Moreover, summary judgment must be entered when "the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   WARD CANNOT MAINTAIN A MONELL BECAUSE THE UNDISPUTED FACTS DO NOT SHOW THE EXISTENCE OF ANY POLICY, PRACTICE, OR CUSTOM ON THE PART OF DEFENDANT THAT CAUSED ANY CONSTITUTIONAL VIOLATION

Ward alleges that the School District has a "practice and pattern of not telling administrators why they were non-renewed or placed back in the classroom as a teacher." (Doc. 30, p. 55). He also claims that the Superintendent's decision to deny

his grievance was due to an unidentified policy or custom. (Id., p. 61). Finally, Ward claims that it was the School District's policy, practice, or custom to hire few African-American male principals and to put those the School District did hire into the most challenging schools. (Id., p. 63).

A governmental entity may not be sued under § 1983 for an injury inflicted solely by its employees or agents; instead, a plaintiff must point to the entity's "policy or custom" as responsible for the injury in order to establish liability. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). To establish a policy or custom, a plaintiff must identify either (1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker. Grech v. Clayton Cty., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

There is no evidence in this case of any policy or custom on behalf of the School District that influenced any decision on the hiring or placement of African-American male principals, the denial of grievances, or the timeliness of telling administrators that they would be placed back in a classroom. Ward therefore has failed to establish, let alone show a disputed issue of fact concerning, the existence of any such policy or custom that *caused* a constitutional violation, and Ward's Monell claims against the School District must fail.

6

**B.    WARD'S § 1981 AND TITLE VII RACE AND GENDER DISCRIMINATION CLAIMS FAIL BECAUSE THE UNDISPUTED MATERIAL FACTS SHOW THAT WARD WAS NOT TREATED LESS FAVORABLY THAN ANY SIMILARLY SITUATED COMPARATOR AND THE DISTRICT HAD LEGITIMATE, NON-DISCRIMINATORY, NON-PRETEXTUAL REASONS FOR ITS ACTIONS**

"When section 1983 is used as a parallel remedy for violation... of Title VII, the elements of the two causes of action are the same(,)" and therefore, the two claims are to be analyzed under the same framework. Underwood v. Perry County Com'n, 431 F.3d 788, 793 (11th Cir. 2005) (internal quotations omitted). Further, "[t]he elements of a claim of race discrimination under 42 U.S.C. § 1981 are . . . the same as a Title VII disparate treatment claim in the employment context." Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 n. 11 (11th Cir. 2000). Therefore, the same framework applies to Plaintiff's race and sex discrimination claims under both Title VII and Section 1981.

**1.    Ward's Claims Must Be Analyzed Under The McDonnell-Douglas Burden-Shifting Framework Because There Is No Direct Evidence of Discrimination**

"A plaintiff may establish a Title VII claim through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination." Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla., 256 F.3d 1095, 1103 (11th Cir. 2001). The framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973), is

used to evaluate claims based on circumstantial evidence. Id. Under this framework, a plaintiff must first establish a prima facie case of discrimination. Id. at 1104. "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor(,) constitute direct evidence of discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (internal citation and quotations omitted). If the alleged evidence suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence. Burrell v. Bd. Of Trustee of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997).

Based upon the facts not in dispute, no direct evidence of racial discrimination against Ward on the part of the School District or any of its officers or employees exists. Ward must therefore make out a prima facie case of discrimination to survive summary judgment—which, for the following reasons, he cannot do.

### 2. Ward Cannot Make Out A Prima Facie Case of Race Discrimination Because He Was Neither Replaced By A Person Outside his Protected Class Nor Treated Less Favorably Than A Similarly-Situated Individual Outside That Class

To establish a prima facie case of race or gender discrimination under the McDonnell Douglas framework, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; *and* (4) he was replaced by a person outside his protected class, or was treated less favorably than a similarly-situated individual outside his

8

protected class. <u>Maynard v. Bd. Of Regents of the Div. of Univs. Of the Fla. Dep't of Educ.,</u> 342 F.3d 1281, 1289 (11th Cir. 2003); <u>see also Hudson v. Middle Flint Behavioral Healthcare,</u> 522 Fed. Appx. 594, 596 (11th Cir. 2013).

### a. *Ward Was Not Replaced By An Individual Outside His Protected Class*

Insofar as Ward's race discrimination claims relate to his removal from the position of principal of Whitesville Road Elementary School, Ward cannot establish a prima facie case on the basis of replacement because his successor, Debra Brock, is an African-American female. (<u>See</u> Freeman Aff., ¶ 3). Thus, just as with his race discrimination claims based on his placement on a PDP, Ward must show that he was treated less-favorably than a similarly-situated comparator.

### b. *Ward Was Not Treated Less Favorably Than A Similarly-Situated Comparator Outside His Protect Class*

To be similarly-situated, the comparator must be "similarly situated in all material respects." <u>Lewis v. City of Union City, Georgia</u>, 918 F.3d 1213, 1218 (11th Cir. 2019). This means that a valid comparator will have "engaged in the same basic conduct (or misconduct) as the plaintiff, . . . will have been subject to the same employment policy, guideline, or rule as the plaintiff, . . . will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff, and . . . will share the plaintiff's employment or disciplinary history[.]"

McQueen v. Alabama Dep't of Transportation, 769 F. App'x 816, 821–22 (11th Cir. 2019) (quoting Lewis, 918 F.3d at 1238-39).

In this case, Ward identifies six (6) alleged comparators, all Caucasian females, whom he claims were neither subject to additional duties or responsibilities when their job performances were brought into question, nor had actions taken against them that lowered their responsibilities, salary, or prestige: (1) Ward's predecessor, Gretta Wright; (2) Anne Cook O'Brien; (3) Tina Johnson Forbus; (4) Penny Johnson; (5) Carol Montgomery; and (6) Peggy Smith. (Doc. 30, pp. 52-54). Not one of these proffered comparators engaged in the same basic conduct and was treated less favorably than Ward.

### i.   **Ward's History of Misconduct**

For an extensive showing of Ward's history of misconduct, see Defendant's Statement of Undisputed Material Facts, ¶¶ 10-32, filed contemporaneously herewith.

### ii.   **Ward's Comparators**

For the conduct of Ward's proffered comparators and the District's actions pertaining to them, see Defendant's Statement of Undisputed Material Facts, ¶¶ 49-71, filed contemporaneously herewith.

### 3. Ward's Gender Discrimination Claims Relating To His Placement On A PDP Also Fail At This Stage Because Ward Was Not Treated Differently From Any Similarly-Situated Female Comparator

Because, as shown extensively above, there is no similarly-situated female comparator who was treated differently from Ward, Ward's gender discrimination claims connected to his placement on a PDP, like his race discrimination claims on that basis and on the basis of his removal from the position of principal, must fail at the prima facie case stage.

### 4. Even If Ward Could Establish A Prima Facie Case For Race Or Gender Discrimination, The School District Had Multiple Legitimate, Non-Discriminatory Reasons For Its Actions.

If a prima facie case for discrimination is established under the McDonnell-Douglas burden-shifting framework, the burden then shifts to the employer to show the existence of a legitimate, non-discriminatory reason for its actions. See, e.g., Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998). If the employer succeeds, the burden then shifts back to the plaintiff to establish that the proffered reason was pretextual. Id. The undisputed facts in this matter clearly establish that the School District had such a reason for each of its complained-of actions, and there is no fact issue that could suggest pretext.

As it relates to his gender discrimination claims based on his removal from the position of principal, Ward's successor is indeed female. (Freeman Aff., ¶ 3).

But even if Ward could make out a prima facie case for gender discrimination, both his gender discrimination and race discrimination claims fail—regardless of whether they relate to his placement on a PDP, his removal from the position of principal, or his other allegations—because the undisputed facts establish that the School District had multiple legitimate, nondiscriminatory reasons for its actions.

Given Ward's extensive history of misconduct, there were legitimate, non-discriminatory reasons both for Ward to be placed on a PDP and to be removed from the principal position. (See generally Section IV.B.2.b.; see also, generally, Defendant's Statement of Undisputed Facts). Ward's supervisor knew of his extensive misconduct when she placed him on the PDP and did so on the basis of that knowledge. (See generally Barton Aff.). And, when the Superintendent determined not to recommend that Ward return the next year as a principal, the Superintendent also was aware of this misconduct, in addition to the fact that Ward did not have tenure as a principal, and made his decision with these factors in mind. (Pugh Aff., ¶ 8).

Regarding other adverse actions alluded to in Ward's Complaint, Ward was required to rewrite his SIP for Whitesville Road in the 2013-2014 school year because his initial SIP did not include a sufficient amount of detail for measuring areas of school improvement for the year. (Barton Aff., ¶ 13). When Ward's

supervisor met with him to discuss the inadequacy of his initial SIP, Ward stated "Tell me what you want me to write, and I'll write it." (Id.).

As it relates to Ward's allegations that his school was overcrowded and that he received no additional administrative help on the basis of a discriminatory motive, both Ward's school and Franklin Forest Elementary School—headed by Carol Montgomery, a Caucasian female—received extra students in the 2012-2013 school year when another school, Unity Elementary, was closed for budgetary reasons. (Cagle Aff., ¶ 4). Students were distributed to both schools based on geographical proximity. (Id.). And, in the 2011-2012, 2012-2013, and 2013-2014 school years, the School District did not place additional administrators at *any* elementary schools due to budgetary concerns. (Cagle Aff., ¶ 7).

During the 2012-2013 and 2013-2014 school years, as at other times, student arrival times were set by the School District Transportation Department district-wide. (Cagle Aff., ¶ 5). Arrival times were set depending upon the locations of bus routes. (Id.). Arrival time for elementary school students district-wide was approximately 7:00 AM, and no elementary schools had arrivals after 7:15 AM. (Id.).

The undisputed facts therefore clearly show that the School District had legitimate, non-discriminatory reasons for all its actions described in Ward's

13

Complaint. And, there is no evidence in this case that could suggest pretext. Therefore, each and every one of Ward's race and gender discrimination claims under Title VII and 42 U.S.C. § 1981 must fail.

## C.   THE UNDISPUTED FACTS SHOW THAT THERE IS NO CONVINCING MOSAIC OF DISCRIMINATION

Discrimination claims may survive summary judgment if there is a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). Even so, the Eleventh Circuit has made clear that a plaintiff must still proffer a sufficient weight of evidence to show that a defendant treated employees of different classes differently. See, e.g., Moultrie v. Georgia Dep't of Corr., 703 F. App'x 900, 907 (11th Cir. 2017).[6]

---

[6] In Moultrie, the plaintiff, an African-American female, and her Caucasian female comparators, were probation officers who authorized improper warrants. 703 F.App'x. at 906. One comparator issued a warrant on the basis of a mathematical error, while the other's mistaken warrant was issued based on another person's failure to enter a revocation in the electronic system. Id. In contrast, the plaintiff failed to take even the basic steps of doing her job in reviewing the system notes. Id. The comparators were disciplined, and the plaintiff was terminated. Id. The Eleventh Circuit affirmed summary judgment for the defendants, holding that the situations were insufficiently similar, and therefore the evidence was too weak to create a "convincing mosaic" to suggest discriminatory motive. Id.

Here, Ward's history of misconduct is not meaningfully comparable to the histories of his potential comparators in nature or in scope; he was not treated less favorably than any of those comparators; and there is no evidence whatsoever, circumstantial or otherwise, of discriminatory intent or motive on the part of the School District or the individual actors Ward identifies in his Complaint. Contrast Smith, 644 F.3d at 1329-46 (evidence supporting convincing mosaic included a motive to discriminate, incidents of Caucasian and African-American employees being treated differently, and the employer's conscious tracking of race in disciplinary decisions). The undisputed facts therefore fail to establish a convincing mosaic of circumstantial evidence to create a triable issue of fact on intentional discrimination, and each and every one of Ward's gender and race discrimination claims must fail.

**D.    WARD'S RETALIATION CLAIMS FAIL BECAUSE WARD DID NOT ENGAGE IN A PROTECTED ACTIVITY, THERE IS NO CAUSAL LINK BETWEEN THE ACTIVITIES AND THE SCHOOL DISTRICT'S ACTIONS, AND THE SCHOOL DISTRICT HAD LEGITIMATE, NON-RETALIATORY, NON-PRETEXTUAL REASONS FOR ITS DECISIONS**

Title VII prohibits employers from retaliating against an employee "because he has opposed any . . . unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Gowski v. Peake, 682 F.3d 1299,

1311 (11th Cir. 2012) (quoting 42 U.S.C. § 2000e-3(a)). The term "unlawful employment practice" means discrimination on the basis of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination. <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 360 (2013).

Both Section 1981 and Title VII retaliation claims are analyzed under the same burden-shifting framework. <u>See</u> <u>Standard v. A.B.E.L. Servs. Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998).

### 1.    Ward Fails To Establish A Prima Facie Case For Retaliation.

To establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected activity; (2) a materially adverse action; and (3) a causal link between the protected activity and the adverse action. <u>Brown v. Ala. Dep't of Transp.</u>, 597 F.3d 1160, 1181 (11th Cir. 2010). If the plaintiff can establish a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. <u>Id.</u> at 1181-82. If the employer does so, then the burden shifts back to the plaintiff to show that the employer's proffered reason is pretextual. <u>Id.</u> Ultimately, the plaintiff must prove that "the desire to retaliate was the but-for cause of the challenged employment action." <u>Siddiqui v. NetJets Aviation, Inc.</u>, 773 F. App'x 562, 566 (11th Cir. 2019) (citation omitted).

### a.   *Ward Did Not Engage In A Statutorily Protected Activity*

Ward identifies two supposed protected acts: (1) complaining in October 2013, in some unspecified context, to the Troup County School Board and Central Office about placement of low-income African-American students at the school where Ward was principal (Id., pp. 58-59); and (2) filing a grievance against his supervisor after receiving his evaluation (Doc. 30, p. 58).

### i.   <u>Ward's Grievance</u>

A workplace grievance listing complaints unrelated to discrimination does not constitute a statutorily protected activity. <u>See, e.g.</u>, <u>Valdes v. Miami-Dade Coll.</u>, 463 F. App'x 843, 846 (11th Cir. 2012); <u>Gerard v. Bd. of Regents of State of Ga.</u>, 324 F. App'x 818, 826 (11th Cir. 2009) (affirming summary judgment for university after university determined not to hire prospective employee plaintiff, where plaintiff's letter laid out a list of grievances but did not indicate that he was discriminated against based on his membership in a protected group).

Here, Ward's grievance concerned his scores on his annual evaluation given by his supervisor, Dr. Pat Barton, and Ward's contention that Barton "misinterpreted" or "misapplied" the evaluation instrument in various undefined ways. (<u>See</u> Cagle Aff., Exh. 2). These allegations have nothing to do with discrimination on the basis of membership in a protected class. Consequently,

Ward's filing of the grievance does not constitute a "statutorily protected activity, and his retaliation claims arising therefrom must fail.

### ii.    The Supposed Complaint To The School Board About Placement Of Students

Ward claims that he complained in October 2013 to the Troup County Board of Education that increased numbers of low-income African-American students from a closed school, Unity Elementary, were being placed at Ward's school, Whitesville Road, thereby straining Whitesville's resources, overcrowding the school and—Ward claims—leading to *de facto* racial segregation in the School District. (See Doc. 30, pp. 58-59). There is no evidence in the record that this complaint ever actually occurred.

Even assuming Ward did make such a complaint to the Board, no details on the communication are provided in the Complaint. Ward does not plead, let alone point to any evidence which could suggest, that the substance of the communication included a complaint to any effect that the Unity students were placed at Whitesville Road *because of Ward's membership in a protected class*.[7] Thus, there is no triable

---

[7] In fact, the Unity students were placed at Whitesville Road on the basis of geographical proximity when Unity closed for budgetary reasons. As it relates, Unity students were also sent to Franklin Forest Elementary, where a Caucasian female, Carol Montgomery, was principal. (Cagle Aff., ¶ 4).

issue of fact on whether Ward's complaint—if it even happened—constituted a protected activity, and summary judgment for the District on this claim is warranted.

### b.   There Is No Evidence Of A Causal Link Between Ward's Complaint About Student Placement And Ward's Removal From The Position of Principal.[8]

To demonstrate a causal connection, a plaintiff must show that (1) the decisionmakers knew of his protected activity, and (2) the protected activity and adverse action weren't "wholly unrelated." Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002). The relatedness between the protected activity and adverse action may be demonstrated by temporal proximity, but absent other evidence of causation, temporal proximity must be "very close." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). The Eleventh Circuit has held that a three-month delay between a protected activity and adverse action, standing alone, was insufficient to show a causal connection, id., but has

---

[8]   With regard to Ward's other basis for retaliation—his grievance—the undisputed facts show that Ward's grievance was submitted on April 14, 2014. (Cagle Aff., ¶ 10). The Superintendent notified Ward that Ward was not to be recommended to return to the position of principal on May 14, 2014, one month later. (Pugh Aff., ¶ 7). But, even if Ward could establish a causal link based on temporal proximity alone, this retaliation claim fails because the Superintendent and the School District had a legitimate, non-retaliatory, non-pretextual reason for their decisions. (See Section IV.D.2., below).

found a seven-week gap between the activity and the adverse action to be sufficient, see Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999).

Ward alleges—without evidence—that he complained to the School Board in October 2013. But he was first informed that he was not going to be recommended to return to the position of principal in May 2014 (Pugh Aff., ¶ 7, Exh. 3)—some seven months later, after which the Board of Education then confirmed the same. And, there is no evidence of any kind that, in making this decision, the Superintendent or Board knew about, let alone took into account, Ward's supposed complaint to the Board. Therefore, even if Ward's October 2013 complaint about student placement constituted a protected activity, there is no issue of disputed material fact that could suggest a causal link between that activity and Ward's removal as principal, and Ward's prima facie case for retaliation arising out of that supposed complaint fails on this element.

### 2.    The District Had A Legitimate, Nondiscriminatory Reason To Remove Ward From The Position of Principal

As the School District has extensively shown, even if Ward could make out a prima facie case for retaliation, there were multiple legitimate, non-retaliatory reasons for removing Ward from the principal position. (See generally Section IV.B.4, above). The burden therefore shifts back to Ward to establish that those reasons were pretextual.

### 3.     There Is No Disputed Issue Of Material Fact That Could Suggest Pretext

A reason is not pretext for retaliation "unless it is shown both that the reason was false, and that [retaliation] was the real reason." <u>Brooks v. County Com'n of Jefferson County, Ala.</u>, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation and quotation omitted). To create a genuine issue of material fact on the question of pretext, a plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision." <u>Jackson v. Ala. State Tenure Comm.</u>, 405 F.3d 1276, 1289 (11th Cir. 2005).

Here, neither Ward's supposed complaint about student placement in October 2013, nor his grievance for Dr. Barton, served as any basis for the Superintendent's May 2014 decision not to recommend Ward for principal for the coming academic year. Instead, the undisputed facts show that what the Superintendent had in mind was Ward's extensive history of misconduct, including his inability to implement appropriate curriculum for students and his misplacement of students in advanced curriculum classrooms contrary to their qualifications, and complaints from parents of students concerning the same; his extensive administration of inappropriate student discipline; his unprofessional communications in dealing with faculty and staff; his inaccurate representations of teacher evaluations without conducting classroom observation; and the fact that he did not have tenure as an administrator.

21

(Pugh Aff., ¶ 8). Thus, even if Ward could withstand the preceding stages of the burden-shifting analysis—which he cannot—there is no disputed issue of material fact that could suggest pretext on Ward's retaliation claims arising from *either* his alleged complaint about student placement *or* from his grievance, and summary judgment on each and every one of Ward's retaliation claims is warranted.

E.   **NO FIRST AMENDMENT VIOLATION EXISTS BECAUSE PLAINTIFF WAS NOT PREVENTED FROM SPEAKING ON A MATTER OF PUBLIC CONCERN**

The First Amendment analysis for public employee speech first requires determining whether the employee spoke as a citizen on a matter of public concern. See Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois, 391 U.S. 563, 574 (1968). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). Employee speech does not automatically constitute speech on a matter of public concern simply because the speaker is a public employee. See, e.g., Battle v. Bd. of Regents for Georgia, 468 F.3d 755, 760 (11th Cir. 2006). "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in

reaction to the employee's behavior." <u>Connick v. Myers</u>, 461 U.S. 138, 138–39 (1983).

or example, in <u>Borough of Duryea, Pa. v. Guarnieri</u>, the plaintiff, a police chief, was terminated and then won reinstatement in a union grievance proceeding challenging the termination. 564 U.S. 379, 383 (2011). The borough council later issued directives instructing the plaintiff how to perform his duties, which the plaintiff claimed was in retaliation for the filing of his grievance, thereby violating his First Amendment right to petition the government for a redress of grievances. <u>Id.</u> The Supreme Court held that the plaintiff's union grievance did not constitute a matter of public concern. <u>Id.</u>

In this matter, as was the case in <u>Guarnieri</u>, Ward's First Amendment claim is based solely on the denial of his grievance against his supervisor, Dr. Pat Barton, the substance of which grievance was Ward's disagreement with Barton's evaluation of Ward's performance as principal. Ward claims that, when the Superintendent denied Ward's grievance at the penultimate stage of the appeal process—an appeal to the Troup County Board of Education—Ward's First Amendment rights were infringed. (Doc. 30, p. 61). But the undisputed facts show that Ward's "speech" in question— his opposition to his evaluation results, his desire that they should be otherwise, and his claim that the evaluation was "misapplied" in some undefined way—was a matter

solely of personal interest, not of public concern, for which there is no First Amendment protection. Consequently, the School District is entitled to summary judgment on Ward's First Amendment claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Troup County School District respectfully requests that its Motion for Summary Judgment as to each and every one of Plaintiff's claims be GRANTED.

Respectfully submitted this 26th day of August, 2019.

**HALL BOOTH SMITH, P.C.**
*/s/ Jacob Stalvey O'Neal*
KENNETH D. JONES
Georgia Bar No. 402101
RUSSELL A. BRITT
Georgia Bar No. 473664
JACOB STALVEY O'NEAL
Georgia Bar No. 877316
*Counsel for Defendant*

191 Peachtree Street, N.E., Suite 2900
Atlanta, GA  30303-1775
Tel:  404-954-5000; Fax:  404-954-5020
Email:  kjones@hallboothsmith.com
Email:  rbritt@hallboothsmith.com
Email:  joneal@hallboothsmith.com

## LOCAL RULE 7.1D CERTIFICATION

Pursuant to Local Rule 7.1D for the Northern District of Georgia, the undersigned counsel for Defendants certifies that the above and foregoing is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B and C.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ERNEST HAYWARD WARD,

     Plaintiff,

v.

TROUP COUNTY SCHOOL
DISTRICT,

     Defendant.

CIVIL ACTION FILE
NO. 3:17-cv-00183-TCB-RGV

---

## CERTIFICATE OF SERVICE

     I hereby certify that I have this day served a copy of the within and foregoing **Brief in Support of Defendant's Motion for Summary Judgment** upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said document with the CM/ECF system which will automatically send electronic notification to the following:

Ernest Hayward Ward
222 Clearview Court
LaGrange, GA  30241

Respectfully submitted this 26th day of August, 2019.

**HALL BOOTH SMITH, P.C.**

*/s/ Jacob Stalvey O'Neal*
KENNETH D. JONES
Georgia Bar No. 402101
RUSSELL A. BRITT
Georgia Bar No. 473664
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendant*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA  30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  kjones@hallboothsmith.com
Email:  rbritt@hallboothsmith.com
Email:  joneal@hallboothsmith.com

67604204-1
5913-0025