Case 3:17-cv-00183-TCB   Document 97   Filed 04/01/21   Page 1 of 13
USCA11 Case: 20-11697   Date Filed: 04/01/2021   Page: 1 of 12

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11697
Non-Argument Calendar

_____

D.C. Docket No. 3:17-cv-00183-TCB

ERNEST HAYWARD WARD,

                                                                                  Plaintiff-Appellant,

versus

TROUP COUNTY SCHOOL DISTRICT,

                                                                                   Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 1, 2021)


Before LAGOA, BRASHER, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Ernest Ward, proceeding pro se,[1] appeals the district court's grant of summary judgment in favor of his employer, Troup County School District ("School District"). In this civil action, Plaintiff asserts claims for race discrimination, sex discrimination, and for retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981.[2] No reversible error has been shown; we affirm.

I. Background

Plaintiff (a black male) has been employed by the School District since 1994. Between 2007 and 2012, Plaintiff was the principal at Gardner Newman Middle School. During the 2011-2012 school year, the School District received several complaints about Plaintiff from parents after Plaintiff made changes to student eligibility for advanced content classes.

---

[1] We construe liberally pro se pleadings. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

[2] Plaintiff also alleged a claim for violation of the First Amendment. Plaintiff raises no challenge to the district court's grant of summary judgment in favor of the School District on this claim. Plaintiff's First Amendment claim is thus not before us on appeal.

2

Plaintiff was then transferred to serve as principal at Whitesville Road Elementary School for the 2012-2013 school year. During that year, Plaintiff's supervisor received several complaints from teachers about Plaintiff's performance and professionalism. In addition, Plaintiff completed annual teacher evaluations for six teachers without first performing a formal classroom observation as required by the School District's procedures. Whitesville also had a high rate of out-of-school suspensions, representing nearly half of the School District's elementary out-of-school suspensions.

In October 2013, Plaintiff sent an email to Whitesville faculty and staff in which he complained that some teachers had been relying on him too heavily to maintain control of their classrooms. Plaintiff told his staff to "decide if teaching is for you and do what you need to be successful or find . . . another profession." Plaintiff said anyone unable or unwilling to adjust to his expectations could submit their resignation.

In response to Plaintiff's October 2013 email, Plaintiff was placed on a mandatory Professional Development Plan ("PDP"). As part of the PDP, Plaintiff was required to shadow four elementary school principals with a focus on "[p]lanning and conducting staff meetings; working collaboratively with instructional specialists; conducting classroom walkthroughs, establishing and

3

communicating curriculum and instructional expectations; and, managing time with all administrative tasks."

In March 2014, Plaintiff received his 2013-2014 annual evaluation. The evaluation rated Plaintiff as satisfactory overall but rated him as needing improvement in planning and implementing curriculum, staff evaluation, and communicating effectively with personnel.

At the end of the 2013-2014 school year, Plaintiff was not recommended for re-employment as a principal. Plaintiff was, instead, reassigned to teach physical education at a different elementary school. Plaintiff's replacement as principal at Whitesville was a black female.

In December 2017, Plaintiff filed this civil action. The magistrate judge -- in an 88-page report and recommendation ("R&R") -- recommended granting the School District's motion for summary judgment. The district court overruled Plaintiff's objections to the R&R. The district court adopted the R&R and granted summary judgment in favor of the School District.

II.   Discussion

We review de novo the district court's grant of summary judgment. Ave.

CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1293 (11th Cir. 2013). We view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Id. at 1294.

A. Race & Sex Discrimination[3]

The law teaches that "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). Our "sole concern" in a Title VII civil action is whether the employer engaged in unlawful discrimination -- not whether the plaintiff is, in fact, a good employee. Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1266 (11th Cir. 2010). In other words, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Id. (citation and alteration omitted).

Title VII does make it unlawful for an employer to discriminate on the basis of an employee's race or sex. See 42 U.S.C. § 2000e-2. Both Title VII and section

---

[3] In his appellate brief, Plaintiff appears to argue that he has demonstrated race discrimination based on both a mixed-motive theory and on a disparate-impact theory. Because Plaintiff presents these arguments for the first time on appeal, we will not consider them.

1981 "have the same requirements of proof and use the same analytical framework." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Plaintiff bears the ultimate burden of proving -- by a preponderance of the evidence -- that the School District discriminated unlawfully against him.  See Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008).

Because this case involves only circumstantial evidence of discrimination, we apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Alvarez, 610 F.3d at 1264.  Under this framework, the plaintiff must first establish a prima facie case of discrimination, which creates a presumption of unlawful discrimination against the employee.  Id. The employer may then rebut that presumption with legitimate, nondiscriminatory reasons for the adverse employment acts.  Id.  The burden then shifts to the employee to produce evidence sufficient to create a genuine issue of material fact that the employer's articulated reasons are a pretext for unlawful discrimination. Id.

To establish a prima facie case of discrimination, a plaintiff must establish that he (1) belongs to a protected class, (2) was subjected to an adverse employment action, (3) was qualified to perform the pertinent job; and (4) was treated less favorably by his employer than "similarly situated" employees outside

6

the protected class or was replaced by someone outside his protected class. Lewis v. City of Union City, Ga., 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc); Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004) (listing the prima facie elements for discriminatory discharge). That Plaintiff satisfied the first three elements is undisputed. Briefly stated, the adverse employment acts underlying Plaintiff's claims are Plaintiff's placement on the PDP and Plaintiff's removal from his position as principal at Whitesville.

To satisfy the similarly-situated element, a plaintiff must show that he and his comparators are "similarly situated in all material respects." Id. at 1226. Whether a comparator meets this standard is determined "on a case-by-case basis, in the context of individual circumstances." Id. at 1227. Generally speaking, a "similarly situated" comparator is an employee who "engaged in the same basic conduct (or misconduct) as the plaintiff;" was "subject to the same employment policy, guideline, or rule;" had the same supervisor; and who "share[d] the plaintiff's employment or disciplinary history." Id. at 1227-28.

In support of his claims for race and sex discrimination, Plaintiff identified six white female principals as purported comparators. The record supports the district court's determination that these six people were not "similarly situated in all material respects" to Plaintiff. Among other things, none of the six comparators

7

sent an unprofessional school-wide email; and none completed teacher evaluations without performing the required observations. Because nothing evidences that the proposed comparators engaged in basic misconduct similar to Plaintiff, they do not constitute proper comparators.

Because Plaintiff identified no similarly-situated comparator who was treated more favorably than he was -- and because he was replaced by a person of the same race -- the district court concluded properly that Plaintiff failed to establish a prima facie case of race discrimination.

Plaintiff did, however, establish a prima facie case of sex discrimination for his removal as principal: Plaintiff's replacement was female. The School District presented two legitimate, nondiscriminatory reasons for removing Plaintiff from his position as principal: (1) Plaintiff's lack of tenure and (2) Plaintiff's history of misconduct, including the October 2013 email, Plaintiff's completing teacher evaluations without conducting the required observations, excessive and inappropriate student discipline, and placing students inappropriately into advanced content classes.

Once the School District identified legitimate, nondiscriminatory reasons for its decision, the burden shifted back to Plaintiff to demonstrate "that the reasons given by the employer were not the real reasons for the adverse employment

8

decision." See Chapman, 229 F.3d at 1024.  When -- as in this case -- the employer's "proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." See id. at 1030.  To satisfy his burden of showing pretext, Plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale."  See Holland v. Gee, 677 F.3d 1047, 1055-56 (11th Cir. 2012).  Plaintiff has failed to do so.

Plaintiff does not dispute that the October 2013 email was unprofessional, but says he sent the email because he was frustrated with the ongoing discipline issues at Whitesville and the lack of additional resources provided by the School District.  In a similar way, Plaintiff does not dispute that he failed to conduct formal observations for all teacher evaluations, but indicates that he and his supervisor had a difference of opinion about the pertinent observation requirements.  Plaintiff also disagrees that Whitesville had excessive numbers of out-of-school suspensions, and he seeks to justify his decision to restructure the advanced content classes.

Plaintiff also disagrees with his "needs improvement" ratings on his 2013-2014 annual evaluation; he disagrees because (1) he was rated "Satisfactory" in his

9

2012-2013 annual evaluation, (2) he was rated "Satisfactory" overall in his 2013-2014 annual evaluation, and (3) his supervisor gave him no advance notice of the purported deficiencies.

Instead of rebutting the School District's proffered reasons, Plaintiff mainly quarrels with the strength of those reasons or attempts to justify or to blame others for his acts of alleged misconduct. That Plaintiff subjectively disagrees with the merits of the School District's reasons and with the soundness of the School District's assessment of his performance is not enough to show that the proffered reasons were not the real reasons for the School District's decision. See Chapman, 229 F.3d at 1030.

On this record, Plaintiff has failed to show that the School District's proffered reasons were so implausible, inconsistent, or incoherent that a reasonable factfinder could infer that the reasons were not the true reasons and were, instead, a pretext for unlawful discrimination. See Holland, 677 F.3d at 1055-56.

We affirm the district court's grant of summary judgment in favor of the School District on Plaintiff's claims for discrimination based on race and sex.[4]

---

[4] We also see no error in the district court's alternative reason for granting summary judgment on Plaintiff's claim for race discrimination in violation of section 1981 -- that Plaintiff failed to demonstrate sufficiently the existence of a discriminatory policy or custom of the School District.

B. Retaliation

Apart from the issue of prohibited discrimination, employers are barred from retaliating against an employee because he opposed an employment practice made unlawful by Title VII.  See 42 U.S.C. § 2000e-3(a).  We apply the McDonnell Douglas burden-shifting framework to retaliation claims based on circumstantial evidence.  See Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).

To establish a prima facie case for retaliation under Title VII or section 1981, a plaintiff must show that he engaged in statutorily protected activity and that he suffered a materially adverse employment act that was causally related to the protected activity.  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012).

The district court committed no error in concluding that Plaintiff engaged in no statutorily protected activity.  In substance, Plaintiff contends the School District retaliated against him after Plaintiff raised concerns about the disproportionate number of black students assigned to Whitesville.  Plaintiff's complaints about school districting, however, constituted no opposition either to an employment practice made unlawful under Title VII or to discrimination in the

making and enforcement of contracts in violation of section 1981.  Cf. Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997) (stating that "not every act by an employee in opposition to racial discrimination is protected" and that "[t]he opposition must be directed at an unlawful employment practice of an employer.").

 AFFIRMED.[5]

---

[5] In his appellate brief, Plaintiff contends the School District denied him procedural protections under Georgia law.  Because Plaintiff never raised this argument in the district court, the argument is not properly before us on appeal.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 01, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-11697-GG
Case Style: Ernest Ward v. Troup County School District
District Court Docket No: 3:17-cv-00183-TCB

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joseph Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion